UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAOMI FARFAN, et al., <br> Plaintiffs, <br> v. <br> SSC CARMICHAEL OPERATING COMPANY LP, et al., <br> Defendants. | Case No. 18-cv-01472-HSG <br><br> **ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND DENYING MOTIONS TO DISMISS AND MOTION TO TRANSFER AS MOOT** <br><br> Re: Dkt. Nos. 20, 22, 25, 28, 31 |

Pending before the Court are Defendants' motions to compel arbitration of the individual claims of Plaintiffs Terri Richter, Naomi Farfan, and Lollie Webster, Dkt. Nos. 22 and 25, motions to dismiss all class action claims, Dkt. Nos. 20 and 28, and motion to transfer to the Eastern District of California, Dkt. No. 31. For the following reasons, the Court GRANTS Defendants' motions to compel arbitration, and DENIES the remaining motions as moot.

## I. INTRODUCTION

Plaintiffs Naomi Farfan, Lollie Webster, and Terri Richter filed this putative class and collective action suit against SSC Carmichael Operating Company LP; SSC Carmichael Operating GP, LLC; SSC Carmichael Management Company LP; SSC Hickory 13th Operating Company LLC; SSC Hickory East Operating Company LLC; SavaSeniorCare Administrative Services, LLC; SavaSeniorCare LLC; and SavaSeniorCare Consulting LLC (collectively, "Defendants") on March 7, 2018. *See* Dkt. No. 1. According to the First Amended Complaint, Plaintiffs Webster and Farfan (the "California Plaintiffs") were employed by Defendants as Certified Nursing Assistants in Carmichael, California, and Plaintiff Richter was employed by Defendants as a Licensed Practical Nurse in Hickory, North Carolina. Dkt. No. 12 ("FAC") ¶¶ 11–14, 17. Plaintiffs Farfan and Webster, as representatives of a putative California class and California sub-

1  class, allege that Defendants violated California labor laws by failing to provide adequate meal
2  and rest breaks, and failing to pay overtime compensation. FAC ¶¶ 32–45. Plaintiffs also bring a
3  claim under the Fair Labor Standards Act ("FLSA") on behalf of a putative nationwide class for
4  the same alleged violations. FAC ¶¶ 46–52. On July 9, 2018, Defendants filed the currently-
5  pending motions to compel arbitration, motions to dismiss for lack of personal jurisdiction, and
6  motion to change venue. Dkt. Nos. 20, 22, 25, 28, 31. On July 26, 2018, the parties stipulated that
7  the currently-pending motions to dismiss and motion to change venue should not be considered
8  until the Court addresses the motions to compel arbitration. *See* Dkt. No. 37.

## II. LEGAL STANDARD

### A. Arbitrability

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In analyzing whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, courts apply state law principles of contract formation and interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.,* 144 F.3d 1205, 1210

(9th Cir. 1998).

When considering a motion to compel arbitration, the Court is limited to determining (1) whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1119 (9th Cir. 2008). If these conditions are satisfied, the court must compel arbitration. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration.").

**B.  Unconscionability**

California Civil Code section 1670.5 provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of the unconscionable clause so as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a).

An otherwise valid arbitration agreement is enforceable independent of the rest of the contract. *Buckeye Check Cashing v. Cardegna,* 546 U.S. 440, 445 (2006). Therefore, if an arbitration provision itself is not unconscionable, it must be enforced. *See Lucas v. Gund,* 450 F.Supp.2d 1125, 1130 (C.D.Cal.2006).

Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *Armendariz v. Foundation Health Psychcare Svcs. Inc.,* 24 Cal. 4th 83, 114 (2000). Procedural and substantive unconscionability need not be present in equal amounts. *Id.* Courts apply a "sliding scale" where procedural and substantive unconscionability need not be present in the same degree. *Id.* A showing of greater substantive unconscionability will require less evidence of procedural unconscionability and vice versa. *Id.* However, both forms of unconscionability must be present in some amount "for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1521 (1997), *as modified* (Feb. 10, 1997). The party opposing arbitration bears the burden to demonstrate unconscionability. *Sonic-Calabasas A, Inc.*

3

*v. Moreno*, 57 Cal. 4th 1109, 1148 (2013).

**III. DISCUSSION**

    **A. Background**

Each Named Plaintiff signed an Employee Dispute Resolution Program Agreement ("EDR Agreement") when applying for employment with Defendants. *See* Dkt. No. 22-1, Ex. 1 (Richter EDR Agreement); Dkt. No. 25-1, Exs. 1, 4 (Farfan and Webster EDR Agreements) (together, "EDR Agreements"). Additionally, each Named Plaintiff received an Employee Dispute Resolution Booklet ("EDR Booklet"), explaining the EDR Program processes. *See* Dkt. No. 22-1, Exs. 2, 3 (Richter); Dkt. No. 25-1, Exs. 2, 4, 5 (Farfan and Webster). The EDR Agreements provide that:

> [B]oth the Facility and I agree to resolve all claims, controversies or disputes relating to my application for employment, my employment and/or termination of employment exclusively through the Employment Dispute Resolution Program. By way of example only, such claims include claims under federal, state and local statutory, regulatory or common law . . .
> I understand and agree that the last step of the EDR Program is final and binding arbitration by a neutral arbitrator. I understand and agree that this mutual agreement to use the EDR Program and to arbitrate claims means that the Facility and I are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial. I further understand and agree that if I file a lawsuit regarding a dispute arising out of or relating to my application for employment, my employment or the termination of my employment, the Facility may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use the EDR Program instead.

EDR Agreements. The EDR Booklets provide that:

> This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial on issues covered by the EDR Program.
> . . . *This Program covers only claims by individuals and does not cover class or collective actions.*

Dkt. No. 22-1, Ex. 3; Dkt. No. 25-1, Ex. 5 (together, "EDR Booklets") at 1 (emphasis added).

The Third Circuit reviewed this same language in *Novosad v. Broomall Operating Co. LP*, finding that "the arbitration clause's plain language excludes class and collective actions from mandatory arbitration." 684 F. App'x 165, 166 (3d Cir. 2017).

4

Post-*Novosad*, the Middle District of North Carolina reviewed the same EDR Agreement and EDR Booklet in *Allen v. SSC Lexington Operating Company LLC*. *Allen v. SSC Lexington Operating Co. LLC*, No. 1:16CV1080, 2017 WL 4357449 (M.D.N.C. Sept. 29, 2017). The *Allen* court interpreted the sentence "[t]his Program covers only claims by individuals and does not cover class or collective actions" in the context of the limitation that the parties were "bound to use the EDR Program as the only means of resolving employment related disputes," and found that "[a]t a minimum, the plain language of the agreement raises doubt as to whether the parties intended their agreement to include a waiver of class or collection action, and is susceptible to either of the constructions asserted by the parties." *Id.* at *3 (internal quotation marks omitted). The court then resolved the ambiguity in favor of arbitration of the class action claims. *Id.*

### B. Applicability of the FAA

"The FAA applies to any contract evidencing a transaction involving commerce that contains an arbitration provision." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 238 (2016) (internal quotation marks omitted). The phrase "involving commerce" as used in the FAA is interpreted broadly as the functional equivalent of "affecting commerce." *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–77 (1995).

Plaintiffs contend that the EDR Agreements signed by the California Plaintiffs must be interpreted under the California Arbitration Act rather than the FAA. Dkt. No. 39 at 8. Plaintiff contends that, because the California Plaintiffs worked exclusively within Carmichael, California, the EDR Agreement does not "evidence a transaction involving [interstate] commerce." *Id*.

Defendants contend that each Defendant is "affiliated with a national organization with its headquarters and principal place of business outside California, and which engages nurses and other employees in many states to provide services in the stream of interstate commerce." Dkt. No. 25 at 6 n.1. More importantly, Plaintiffs allege that all Defendants "have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce." FAC ¶ 47. Plaintiffs' own allegations in the FAC are sufficient to establish that the EDR Agreements signed by the California Plaintiffs evidence a transaction affecting interstate commerce. *See Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988) ("Factual

5

1 assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions
2 conclusively binding on the party who made them."). The FAA therefore governs interpretation of
3 all Plaintiffs' EDR Agreements.

**C. Validity of EDM Agreement**

    **i. Unconscionability**

Plaintiffs contend that the EDR Agreement is unenforceable as to Plaintiffs Farfan and Webster because the Agreement is both procedurally and substantively unconscionable. Dkt. No. 39 at 16–18.

        a. Procedural Unconscionability

California courts have found arbitration clauses that are presented as a condition of employment without the opportunity for the prospective employee to negotiate to be contracts of adhesion. *Armendariz*, 24 Cal. 4th at 114–115; *see also Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1267 (Ct. App. 2017), *review denied* (June 14, 2017) (finding some degree of procedural unconscionability in employment contract where employee "had no opportunity to negotiate over the arbitration provision."). Because Defendants presented the form contract to the California Plaintiffs as a condition of employment from a position of superior bargaining power, the procedural unconscionability prong is satisfied. *See* EDR Agreements ("If you wish to be considered for employment you must read and sign the following agreement binding you to use the EDR Program to resolve disputes.").

        b. Substantive Unconscionability

Other than its mandatory nature, no additional evidence of procedural unconscionability appears on the face of the Arbitration Agreements or in the conditions surrounding their execution. "Where there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012). To show substantive unconscionability, Plaintiffs point only to a lack of bilaterality in the EDR Agreements. Dkt. No. 39 at 17–18.

The EDR Agreements are bilateral on their face. The EDR Agreements state that "both the

Facility and I agree to resolve all claims" under the EDR Program, and that "this *mutual agreement to use the EDR Program and to arbitrate claims means that the Facility and I are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial*." EDR Agreements (emphasis added). Plaintiffs provide no basis for their contention that Defendants would not be subject to enforcement of the same EDR Agreements. *See* Dkt. No. 39 at 18. Plaintiffs have therefore failed to demonstrate the high degree of substantive unconscionability required to invalidate the EDR Agreements.

### D. "Non-Signatory" Defendants

The EDR Booklets state that "[a]ll references to the 'Company' in this booklet refer to subsidiaries that employ the individuals working there." EDR Booklets at 1. Plaintiffs contend that Plaintiffs Farfan and Webster were employees of Carmichael O.C., Dkt. No. 39 at 14, and that Plaintiff Richter was an employee of SSC Hickory 13th Operating Company LLC, Dkt. No. 40 at 10. Plaintiffs contend that all other Defendants are therefore non-parties to the EDR Agreement, and the dispute between Plaintiffs and any "Non-Signatory Defendants" is not within the scope of the EDR Agreement. Dkt. No. 40 at 10; Dkt. No. 39 at 14.

"[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). "Agency principles have been held to permit nonsignatory corporations to compel arbitration under arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at least when the allegations against the nonsignatory corporation do not differ substantially from those against its signatory affiliate." *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 990 (N.D. Cal. 1996); *see also Ellison v. Alexander*, 207 N.C. App. 401, 412 (2010) (finding that a non-signatory may enforce an arbitration agreement if its "alleged liability arises from [its] actions as an agent of the corporate signatory to the arbitration agreement").

Here, Plaintiffs allege that all Defendants "are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single entity and/or joint employer for purposes of the instant action." FAC ¶ 21. Plaintiffs' allegations against each Defendant are identical, and Plaintiffs allege that "at all relevant times each

Defendant was the officer, director, employee, agent, representative, alter ego, joint employer, co-employer, or co-conspirator of each of the other Defendants." *Id.* ¶ 4. Plaintiffs' allegations therefore establish an agency relationship sufficient to allow the non-signatory Defendants to enforce the EDR Agreements. *See Am. Title Ins. Co.,* 861 F.2d at 226 ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.").

### E. CA Code of Civil Procedure § 1281.2

California Code of Civil Procedure Section 1281.2 states in relevant part:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: . . .
> (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.

Cal. Civ. Proc. Code § 1281.2.

Plaintiffs contend that the California Plaintiffs are party to both the EDR Agreement and to this action, which involves third parties not party to the EDR Agreement. Dkt. No. 29 at 9–10. As discussed above in Section III(D), all Defendants are parties to the EDR Agreements, and therefore are not third parties under section 1281.2.

### F. Scope of EDR Agreement

Plaintiffs contend that statement in the EDR Booklets that "[t]his Program covers only claims by individuals and does not cover class or collective actions" creates an exception, under which class and collective actions fall outside of the scope of the EDR Agreements. Dkt. No. 40 at 6–8; Dkt. No. 39 at 6–8.

The EDR Booklets also list disputes "covered under the EDR Program," including: "discipline, discrimination, fair treatment, harassment, termination and other legally protected rights." EDR Booklets at 3. The EDR Booklets then note that "[d]isputes not covered under the EDR Program relate to workers' compensation, unemployment benefits, health, welfare and

8

1 retirement benefits and claims by the Company for injunctive relief to protect trade secrets and
2 confidential information." *Id.*

3 Defendants contend that the list of disputes not covered on page three of the EDR Booklets
4 is exhaustive, and that the requirement that the parties "resolve *all* claims, controversies or
5 disputes" relating to employment through the EDR Program, when read in connection with the
6 sentence on page one of the EDR Booklets, implies that individual arbitration is the exclusive
7 means of resolving employment disputes. Dkt. No. 43 at 6; Dkt. No. 44 at 7–8.

8 The Court is persuaded by the *Allen* court's reasoning with respect to the applicability of
9 the EDR Agreements to Plaintiffs' class action claims. The EDR Agreements and EDR Booklets
10 are, at best, ambiguous as to whether putative class action claims must be arbitrated, or are
11 permitted at all in any forum. *See Allen*, 2017 WL 4357449 at *4. Under the FAA, that ambiguity
12 must be resolved in favor of arbitration. *Volt,* 489 U.S. at 476. Therefore, Plaintiffs' claims must
13 be referred to arbitration.

### G. PAGA Claims

15 Plaintiffs contend that the California Plaintiffs' Private Attorneys General Act (PAGA)
16 claim is not subject to mandatory arbitration. Defendants do not dispute that the PAGA claim is
17 not subject to arbitration. "[A]s a matter of state law, an employment agreement that compels a
18 waiver of the employee's statutory right to bring representative claims under the PAGA is contrary
19 to public policy and unenforceable." *Franco v. Arakelian Enterprises, Inc.*, 234 Cal. App. 4th
20 947, 961–62 (2015), *as modified* (Mar. 11, 2015). Plaintiffs' PAGA claims are therefore not
21 subject to mandatory arbitration.

22 //
23 //
24 //
25 //
26 //
27 //
28 //

9

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to compel arbitration of Plaintiffs' non-PAGA claims. Plaintiffs' PAGA claims are hereby **STAYED** pending arbitration. The Court **DENIES**, without prejudice, Defendants' motions to dismiss and motion to transfer as moot. The parties shall file a joint report regarding the status of the arbitration proceeding 90 days from the date of this order, and every 90 days thereafter until that proceeding is concluded. The parties also are directed to jointly notify the Court within 48 hours of the conclusion of the arbitration proceeding. The clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated: 2/1/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge